1 | **PERKINS COIE LLP**
DAVID T. BIDERMAN (SBN 101577)
2 | DBiderman@perkinscoie.com
STEVEN K. HWANG (SBN 216852)
3 | SKHwang@perkinscoie.com
1888 Century Park E., Suite 1700
4 | Los Angeles, CA 90067-1721
Telephone: (310) 788-9900
5 | Facsimile: (310) 788-3399

6 | REGINA L. LAMONICA (Pro Hac Vice Pending)
RLaMonica@perkinscoie.com
7 | 131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
8 | Telephone: (312) 324-8400
Facsimile: (312) 324-9400

9 |
Attorneys for Defendant
10 | IMMACULATE BAKING CO.

11 | UNITED STATES DISTRICT COURT

12 | CENTRAL DISTRICT OF CALIFORNIA

13 |

14 | JAMES REIDER, individually and on behalf of all others similarly situated,

15 | Plaintiff,

16 |

17 | v.

18 | IMMACULATE BAKING CO., a Delaware corporation; and DOES 1 through 10, inclusive,

19 |

20 | Defendant.

Case No. 8:18-cv-01085-JLS-AS

**DEFENDANT IMMACULATE BAKING CO.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

[Filed with Notice of Motion and Motion; Request For Judicial Notice; and [Proposed] Order]

Date:        October 5, 2018
Time:        2:30 p.m.
Courtroom:   10A
Judge:       Josephine L. Staton

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................... 1

II.     BACKGROUND ........................................................................ 3

     A.    Immaculate Discloses the Contents and Weight of the Cake Mix on the Packages' Labels ............................................. 3

     B.    Plaintiff's Slack-Fill Allegations ................................... 5

III.    LEGAL STANDARDS .............................................................. 7

     A.    Motion to Dismiss Standard ........................................... 7

     B.    Rule 9(b) Standard ....................................................... 8

IV.    ARGUMENT ........................................................................... 9

     A.    Immaculate's Packaging is Not Misleading to Any Reasonable Consumer ..................................................... 9

     B.    Plaintiff Fails to Plausibly Allege a Violation of the CLRA ............. 13

           1.    Plaintiff Fails to Plausibly Allege that Immaculate's Packaging Contains any Misrepresentations ........................... 14

           2.    Plaintiff Has Not and Cannot Allege Reliance and Damages .............................................................. 17

V.     PLAINTIFF LACKS STANDING ............................................. 19

     A.    Plaintiff Lacks Standing to Seek Injunctive Relief ............. 19

     B.    Plaintiff Lacks Standing to Assert Claims Against All Cake Scratch Mix Products ................................................. 20

VI.    PLAINTIFF'S CLAIMS ARE PREEMPTED ............................... 22

VII.   CONCLUSION ....................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ................................................................. 8, 17

*Balistreri v. Pacifica Police Dep't.*,
    901 F.2d 696 (9th Cir. 1990) ............................................................. 7

*Bautista v. Cytosport, Inc.*,
    223 F. Supp. 3d 182 (S.D.N.Y. Dec. 12, 2016) ................................ 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................... 8

*Benson v. Fannie May Confections Brands, Inc.*,
    No. 17-C-3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018) ..................... 16, 23

*Bush v. Mondelez Int'l, Inc. ("Mondelez I")*,
    Case No. 16-cv-02460-RS, 2016 WL 5886886 (N.D. Cal. Oct. 7,
    2016) .......................................................................... 10, 12, 15

*Bush v. Mondelez Int'l, Inc. ("Mondelez II")*,
    Case No. 16-cv-02460-RS, 2016 WL 7324990 (N.D. Cal. Dec. 16,
    2016) .......................................................................... 15, 16

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047, 1055 (9th Cir. 2011) ................................................. 8

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) ........................................................... 19

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) .......................................................................... 19

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. Feb. 26, 2018) ................................ 11

*Daniel v. Tootsie Roll Industries, LLC*,
    No. 17-CV-7541 (NRB), 2018 WL 3650015 (S.D.N.Y. Aug. 1,
    2018) .......................................................................... 16

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ................................................................. 18, 19, 20

*Ebner v. Fresh, Inc.*,
   838 F.3d 958, 965 (9th Cir. 2016) ...................................................... 11

*Escobar v. Just Born, Inc.*,
   2017 WL 5125740, slip op. (C.D. Cal June 12, 2017)....................... 11

*Fermin v. Pfizer Inc.*,
   No. 15-cv-2133 (SJ) (ST), 2016 WL 6208291 (E.D.N.Y. Oct. 18,
   2016).................................................................................................... 12

*Freeman v. Time*,
   68 F.3d 285 (9th Cir. 1995) ............................................................ 9, 12

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*,
   528 U.S. 167 (2000) ........................................................................ 19

*Gitson v. Trader Joe's Co.*,
   Case No. 13-cv-01333-WHO, 2013 WL 5513711 (N.D. Cal. Oct. 4,
   2013).................................................................................................... 12

*Gonzales v. Peter Thomas Roth Labs*, LLC,
   No. 17-cv-01393, 2017 WL 5633274 (C.D. Cal. Nov. 17, 2017)
   (Staton, J.)................................................................. 2, 10, 11, 18

*Gordon v. Tootsie Roll Indus., Inc.*,
   No. CV 172664 DSF (MRWx), 2017 WL 4786090 (C.D. Cal. Oct.
   4, 2017)............................................................................................ 20, 21

*Granfield v. NVIDIA Corp.*,
   No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012)................. 21

*Hawkins v. UGI Corp.*,
   Case No. 14-08461 DDP, 2016 WL 2595990 (C.D. Cal. May 4,
   2016).................................................................................................... 13

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014)................................................. 23

*Ileto v. Glock*,
   349 F.3d 1191 (9th Cir. 2003) ......................................................... 7

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................. 8

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) .............................................................. 10

*Manderville v. PCG & S Group, Inc.*,
  146 Cal. App. 4th 1486 (2007) ............................................................ 14

*Martinez-Leander v. Wellnx Life Sciences, Inc.*,
  16-cv-08220 SJO (EX), 2017 WL 2616918 (C.D. Cal. Mar. 6,
  2017) ............................................................................................... 11, 15

*McKinnis v. Kellogg USA*,
  No. 07-CV-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ......... 9

*O'Connor v. Henkel Corp.*,
  No. 14-CV-5547 (AAR) (MDG), 2015 WL 5922183 (E.D.N.Y.
  Sept. 22, 2015) .................................................................................... 16

*Rojas-Lozano v. Google*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016) ................................................ 13

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ............................................................... 17

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ................................................................. 8

*In re Sony PS3 Other OS Litig.*,
  551 Fed. Appx. 916 (9th Cir. 2014) ...................................................... 13

*Stewart v. Riviana Foods, Inc.*,
  16-CV-6157, 2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ............... 12

*Sud v. Costco Wholesale Corp.*,
  No. 17-15307, 2018 WL 3490675 (July 20, 2018) .............................. 20

*In re Tobacco II Cases*,
  46 Cal. 4th 298, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009) ................. 17

*Trazo v. Nestle USA, Inc.*,
  No. 5:12-CV-2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9,
  2013) ............................................................................................... 22, 23

*Vess v. Ciba-Geigy Corp., USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................9

*Wright v. Gen. Mills, Inc.*,
   Civil No. 08-cv-1532 L(NLS), 2009 WL 3247148 (S.D. Cal. Sept.
   30, 2009) ..........................................................................................5, 9

### STATUTES

21 U.S.C. § 343-1 ...................................................................................22

Cal. Civ. Code §§ 1750 et. seq ............................................................passim

Cal. Civ. Code § 1770 ......................................................................5, 9, 13

Cal. Bus. & Prof. Code ....................................................................passim

### RULES

Fed. R. Civ. P. 9 ........................................................................................8

Fed. R. Civ. P. 12(b)(1) ...........................................................................19

Fed. R. Civ. P. 12(b)(6) ..........................................................................7, 8

### OTHER AUTHORITITES

21 C.F.R. § 100.1(c)(4) ............................................................................22

21 C.F.R. § 100.100(a) .......................................................................22, 23

21 C.F.R. § 101.7(a) .................................................................................3

*Feature. Air To Spare: Why is that package half-empty?*
   CONSUMER REPS., Jan. 1010, at 2 ...................................................6

Randall Beard, "Make the Most of Your Brand's 20-Second Window" .................7

Steven Salzberg, Professor of Biomedical Engineering, Computer
   Science and Biostatistics at Johns Hopkins University, FORBES,
   "Cornell's Food Lab is Cooking Up Fake News" (Oct. 2017) ...........................7

1  Defendant IMMACULATE BAKING CO., (herein referred to as

2  "Immaculate" or "Defendant") respectfully submits this Memorandum of Points

3  and Authorities in Support of its Motion to Dismiss Plaintiff's Complaint for

4  Damages and Injunctive Relief for failure to state a claim on which relief may be

5  granted.

6  ## I.     INTRODUCTION

7  Immaculate Baking Cake Scratch Mix® is a specialty baking product for

8  consumers seeking a "made-from scratch" cake recipe that offers the convenience

9  of a single-recipe box mix.  Immaculate's Cake Scratch Mix is sold in a sealed

10  plastic bag inside of a cardboard box bearing the brand's signature whimsical folk

11  art.  The plastic bag containing the mix includes some empty space, which is

12  categorized as "slack-fill" by the United States Food and Drug Administration

13  ("FDA"), as well as California law.  As common-sense dictates, the slack-fill in

14  Immaculate's packaging is both necessary and appropriate.  For example, slack-fill

15  helps consumers avoid spilling the cake mix during use or having it disperse into a

16  cloud of dust upon opening the plastic bag.

17  Nonetheless, Plaintiff James Reider claims that he was deceived by the slack-

18  fill contained in Immaculate's Cake Scratch Mix packaging, and he "expected to

19  receive more Cake Scratch Mix product than was actually being sold."  Compl.

20  § 22.  Plaintiff makes this allegation even though the net weight of the cake mix is

21  clearly displayed in large type on the front of the Immaculate's packaging in *three*

22  different measures: ounces, pounds, and grams—which is of particular importance

23  for Immaculate's target consumers (*i.e.*, at-home bakers).  To illustrate how that

24  weight correlates to the expected yield of the mix, a helpful chart on the back of

25  Immaculate's box indicates exactly how many standard-sized baked goods can be

26  procured from the contents of the box:  one 13" x 9" sheet cake, three 8" round

27  cakes, two 9" round cakes, or 24 cupcakes.  Finally, the side panel provides detailed

28  information regarding the number of servings in each box, the weight of each

serving, and nutritional facts per serving of the mix, as well as the prepared cake. Given these numerous disclosures, and the fact that consumers typically purchase cake mix as a single-recipe mix to make the specified cake-size options, there is no plausible way a reasonable consumer of Immaculate's Cake Scratch Mix would be misled as to the amount of mix contained in the box.  As this Court recently noted in dismissing a similar complaint filed by Plaintiff's counsel, "a reasonable consumer would not simply assume something about the product that a cursory inspection would show not to be true."  *Gonzales v. Peter Thomas Roth Labs*, *LLC*, No. 17-cv-01393, 2017 WL 5633274, at *1 (C.D. Cal. Nov. 17, 2017) (citations omitted) (Staton, J.).

Defendants respectfully suggest that the same outcome is warranted here. Plaintiff's Complaint should be dismissed for the following reasons:

*First*, the Complaint fails to state a claim because as a matter of law, no reasonable consumer would be deceived by the product packaging.  The back of the cardboard box displays a chart showing exactly how many cakes—across a range of standard baking pan sizes—and how many cupcakes the mix will yield upon baking, and the product's net weight is prominently labeled on the front of the box.

*Second*, Plaintiff fails to state a claim under the CLRA as Plaintiff has not pleaded the claim's requisite elements with particularity, and has failed to allege *any* facts to support the conclusion that the slack-fill at issue is nonfunctional and not permitted under the Fair Packaging and Labeling Act ("CFPLA")'s "safe harbor" provisions.

*Third*, Plaintiff lacks standing to request injunctive relief because he has not plausibly shown any risk of future harm.  He also lacks standing to assert claims against products and product sizes that he did not purchase.

*Finally*, Plaintiff failed to allege Immaculate's noncompliance with the FDA regulations that govern slack-fill, and thus, his claims are expressly preempted.

## II.     BACKGROUND

**A.     Immaculate Discloses the Contents and Weight of the Cake Mix on the Packages' Labels.**

Immaculate's Scratch Mixes are dry-goods grocery products used to bake cakes and cupcakes and are sold to consumers by retailers in store and on-line. The mixes are typically packaged in a sealed plastic bag inside an opaque cardboard box measuring approximately 7.5 inches tall, 5.5 inches wide, and 2 inches deep.

Pursuant to FDA regulations, the net weight of the cake mix in each box is displayed in large type on the front of the package. *See* 21 C.F.R. § 101.7(a) ("The principal display panel of a food in package form shall bear a declaration of the net quantity of contents [...] expressed in the terms of weight, measure, numerical count, or a combination of numerical count and weight or measure.").



As seen above, the box provides the net weight of the product in three different measures: ounces, pounds, and grams.[1]  In addition, the side panel provides detailed information regarding the number of servings in each box, the weight of each serving, and nutritional facts per serving of the mix, as well as prepared cake.



The back panel on the box tells consumers what additional ingredients are needed to prepare the cake and specifies that the cake mix in the package can be prepared in a 13" x 9" pan; three 8" round pans; two 9" round pans; or 24 cupcakes. The back panel also specifies other information of importance to the consumer, such as the baking times and temperatures for each pan size—information that experienced and novice bakers, alike, would not overlook.

---

[1] *See also*, CAL. BUS. & PROF. CODE § 12603(b) ("The net quantity of contents (in terms of weight or mass, measure, numerical count, or time) shall be separately and accurately stated in a uniform location upon the principal display panel of that label, using the most appropriate units of both the customary inch-pound system of measure [...].").

As shown through the above images,[2] Immaculate's Cake Scratch Mix packaging provides numerous, clearly-labeled disclosures through which a reasonable consumer would discern exactly how much cake each box will yield.

**B.      Plaintiff's Slack-Fill Allegations.**

Based on asserted violations of California's slack-fill regulations (*see* CAL. BUS. & PROF. CODE § 12606.2, *et. seq.*), Plaintiff alleges that Immaculate has violated California's Consumers Legal Remedies Act ("CLRA") §§ 1770(a)(5) and

---

[2] The Complaint includes photographs of the front and back packaging and alleged contents of a box of Yellow Cake Scratch Mix.  Compl. ¶ 17.  Photographs of front and back packaging of the Yellow Cake Scratch Mix are attached as Exhibit 1 to Defendant Immaculate Baking Co.'s Request for Judicial Notice in Support of Motion to Dismiss Complaint, filed concurrently herewith ("Request for Judicial Notice").  The Court may consider the boxes in their entirety on a motion to dismiss, because the boxes are referred to and exhibited in part in Plaintiff's Complaint.  *Wright v. Gen. Mills, Inc.*, Civil No. 08-cv-1532 L(NLS), 2009 WL 3247148, at *4-5 (S.D. Cal. Sept. 30, 2009) (taking judicial notice and incorporating by reference product labels and packaging items that served as the basis for the allegations in plaintiff's complaint).

(a)(9) and requests relief in the form of damages and injunctive relief.  Plaintiff alleges that he purchased Immaculate's Yellow Cake Scratch Mix in September 2017 in Fountain Valley, California.  Compl. ¶ 3.  Despite purchasing the product for the "*dual* purpose of enjoying its contents *and determining whether the container was lawfully filled*" (emphasis added), Plaintiff claims he was "surprised when he opened the product that the container had more than 50% empty space, or slack-fill." *Id*.  Plaintiff offers no explanation as to how he arrived at the 50% slack-fill estimate or why he believes it is "nonfunctional" slack-fill.  Plaintiff does not allege that any of the net weight, serving size, or yield information displayed on the cardboard box exterior is inaccurate; nor does Plaintiff allege that he did not receive the amount of product set forth on the package label.  Instead, Plaintiff baldly concludes that Immaculate's "containers (1) do not allow consumers to fully view its contents; and (2) contains nonfunctional slack fill.  As such, the packaging is per se illegal." *Id*. ¶ 18.

Plaintiff also fails to allege that Immaculate's product packaging was a material factor in his decision to purchase the Yellow Cake Scratch Mix, or that absent the alleged misrepresentations he would not have purchased Immaculate's Yellow Cake Scratch Mix.  Rather, Plaintiff summarily states: "Based on Defendant's illegal packaging, there is a presumption that product packaging, [sic] reasonable Class Members expected to receive more Cake Scratch Mix product than was actually being sold." *Id*. ¶ 22.  In support of his allegations, Plaintiff cites Professor Brian Wansink, Director of Cornell University's Food and Brand Lab, for the proposition that "75 to 80 percent of consumers don't even bother to look at any label information, no less the net weight […] Faced with a large box and a smaller box […] consumers are apt to choose the large box because they think it's a better value." *Id*. ¶ 1 (citing *Feature. Air To Spare: Why is that package half-empty?*, CONSUMER REPS., Jan. 1010, at 2, attached to Request for Judicial Notice as Exhibit 2).  But, Plaintiff does not allege that Immaculate's Cake Scratch Mix is

1  sold in a larger container than any other cake mixes; thus, Wansink's alleged

2  "studies" are irrelevant to Plaintiff's Complaint.  More importantly, Professor

3  Wansink has recently been the target of an internal review conducted by Cornell

4  University, which determined that he exaggerated the results of studies, including

5  numerous instances of inappropriate data handling and statistical analysis.[3]

6  Wansink's suspect claims lend no support to Plaintiff's allegations and should be

7  given no credence by this Court.

8          Plaintiff also cites to a Nielsen article on brand recognition studies, which

9  notes the "average consumer spends a mere 13 seconds making an in-store

10  purchasing decision, or between 10 and 19 seconds for an online decision."  Compl.

11  ¶ 1 (citing Randall Beard, "Make the Most of Your Brand's 20-Second Window,"

12  attached to Request for Judicial Notice as Exhibit 4).  This article contains no

13  discussion about how product packaging size might influence a consumer's

14  decision.  To the contrary, the author concludes that "[C]onsumers most often

15  default to making purchase decisions based on *simple habit (e.g., previous*

16  *purchase)* or 'instinct,'"—thus the article actually undermines Plaintiff's claims.

17  *Id.*

18                          **III.   LEGAL STANDARDS**

19  **A.     Motion to Dismiss Standard.**

20          A motion to dismiss for failure to state a claim under Federal Rule of Civil

21  Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the claims alleged in the

22  complaint.  *See Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003); *see also*

23  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990) ("Dismissal

24  can be based on the lack of a cognizable legal theory or the absence of sufficient

25  facts alleged under a cognizable legal theory."); *see also* Fed. R. Civ. P. 12(b)(6).

26

27          [3] Steven Salzberg, Professor of Biomedical Engineering, Computer Science and
Biostatistics at Johns Hopkins University, FORBES, "Cornell's Food Lab is Cooking Up Fake
28  News" (Oct. 2017), attached to Request for Judicial Notice as Exhibit 3.

1  While a court must accept all well-pleaded factual allegations in the complaint as

2  true and draw all reasonable inferences in the plaintiff's favor, the court must

3  dismiss the complaint if it lacks "enough facts to state a claim to relief that is

4  plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A

5  court cannot accept unreasonable inferences or groundless legal conclusions.  *See*

6  *Twombly*, 550 U.S. at 555-56 ("[A] plaintiff's obligation to provide the grounds of

7  his entitlement to relief requires more than labels and conclusions, and a formulaic

8  recitation of the elements of a cause of action will not do."); *see also Ashcroft v.*

9  *Iqbal*, 129 S. Ct. 1937, 1949, 1950 (2009) (applying *Twombly* to all complaints)

10  ("Threadbare recitals of the elements of a cause of action, supported by mere

11  conclusory statements, do not suffice.").  Factual allegations "must be enough to

12  raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

13  **B.    Rule 9(b) Standard.**

14      Rule 9(b) mandates that "[i]n alleging fraud or mistake, a party must state

15  with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P.

16  9.  To satisfy Rule 9(b), "a pleading must identify 'the who, what, when, where,

17  and how of the misconduct charged,' as well as 'what is false or misleading about

18  [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v.*

19  *Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in

20  original) (citations omitted).  Circumstances of the alleged fraud must be pleaded

21  "specific[ally] enough to give defendants notice of the particular misconduct [...] so

22  that they can defend against the charge and not just deny that they have done

23  anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

24      Rule 9(b)'s heightened pleading standards apply to state consumer protection

25  statutes that are grounded in fraud, including the CLRA.  *Kearns v. Ford Motor*

26  *Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (affirming dismissal of complaint alleging

27  violations of CLRA when plaintiff's claims of misrepresentation and nondisclosure

28  were "grounded in fraud," and plaintiff failed to plead with particularity); *see also*

*Wright*, 2009 WL 3247148, at *6 (finding Rule 9(b) applies to CLRA state law causes of action). Plaintiff cannot evade Rule 9(b)'s pleading requirements by surreptitiously omitting the "magic" word—fraud. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1108 (9th Cir. 2003). Plaintiff's claims for violations of the CLRA are all grounded in fraud, and the Complaint is littered with references to Immaculate's allegedly intentional misrepresentations. *E.g.*, Compl. ¶¶ 15, 33, 43, 47. Accordingly, Plaintiff must allege fraud with the requisite particularity under Rule 9(b).

## IV.   ARGUMENT

### A.   Immaculate's Packaging is Not Misleading to Any Reasonable Consumer.

Plaintiff alleges that Immaculate engaged in "illegal and unfair methods of competition" in violation of CLRA §§ 1770(a)(5) and (a)(9). Compl. ¶¶ 45-46. Section 1170(a)(5) prohibits the representation "that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Cal. Civ. Code § 1770(a)(5). Section 1770(a)(9) prohibits "advertising goods or services with the intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9). Each of these claims is governed by the "reasonable consumer" standard, which Plaintiff cannot meet as a matter of law here.

To adequately allege a violation of CLRA §§ 1770(a)(5) and (a)(9), Plaintiff must assert facts supporting the inference that a reasonable consumer is *likely* to be deceived by the Immaculate's Scratch Cake Mix packaging. *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir. 1995). "The term 'likely' indicates that deception must be *probable*, not just possible." *McKinnis v. Kellogg USA*, No. 07-cv-2611, 2007 WL 4766060, at *3 (C.D. Cal. Sept. 19, 2007) (emphasis added). This requires more than a mere possibility that Cake Scratch Mix labels "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."

1  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Rather, the

2  reasonable consumer standard requires a probability "that a significant portion of

3  the general consuming public or of targeted consumers, acting reasonably in the

4  circumstances, could be misled." *Id.*

5       As this Court has recently noted, dismissal is appropriate where a factfinder

6  can discern "as a matter of law that members of the public are not likely to be

7  deceived by the product packaging." *Gonzales*, 2017 WL 5633274, at *1, citing

8  *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013), and

9  *Bush v. Mondelez, Int'l, Inc. ("Mondelez I")*, Case No. 16-cv-02460-RS, 2016 WL

10  5886886, at *3 (N.D. Cal. Oct. 7, 2016) (finding that the plaintiff failed to state a

11  plausible claim of consumer deception based on product packaging where the outer

12  packaging disclosed the product's net weight and the number of cookies contained

13  therein).  Thus, a court need not turn a blind-eye to reality at the motion to dismiss

14  phase, particularly where a "reasonable consumer would not simply assume

15  something about the product that a cursory inspection would show not to be true."

16  *Gonzales*, 2017 WL 5633274 at *3, citing *Stewart v. Riviana Foods, Inc.*,

17  16-cv-6157, 2017 WL 4045952, at *9 (S.D.N.Y. Sept. 11, 2017).

18       *Gonzales* is particularly instructive here.  *Gonzales* involved a consumer

19  class action claim based on allegations that the "oversized" packaging of a high-end

20  cosmetic cream misled the plaintiff into believing he was purchasing substantially

21  more product than he actually received.  2017 WL 5633274, at *3 (citations

22  omitted).  In dismissing the complaint, this Court held that the plaintiff did not

23  plausibly plead deceptive packaging, because the net weight disclosure on the box's

24  exterior was accompanied by a photo of the jar inside the box and a notice that the

25  photo represented the product's actual size.  *Id.*, at *3-4.  As such, "a reasonable

26  purchaser of Defendant's Product would be aware of how the net weight on the

27  outside corresponded to the amount of face cream inside."  *Id.*  This Court easily

28  distinguished the facts of *Gonzales* from the facts of *Escobar v. Just Born, Inc.*, a

1   Central District of California case that dealt with candy packaging.  In that case, the

2   court denied the defendant's motion to dismiss, finding that even though the

3   product's net weight was displayed on the exterior packaging, net weight did not

4   carry the day, because a "reasonable consumer is not necessarily aware of [...] how

5   that weight or volume correlates to the product's size."  2017 WL 5125740, slip

6   op., at *9 (C.D. Cal. June 12, 2017).

7        *Escobar* is inapposite here.  Rather, just as in *Gonzales*, Immaculate's Cake

8   Scratch Mix packaging includes not only the product's net weight, but clearly

9   discloses how that weight correlates to the product's size—through a chart

10  depicting exactly how many standard-sized cakes or cupcakes the mix will yield.

11  This chart is easily located on the package and is displayed next to other important

12  information for the consumer, such as the required ingredients and directions to

13  bake the cake.  The packaging removes any possible uncertainty regarding how the

14  product's weight (disclosed in ounces, pounds, and grams) correlates to the

15  product's size: one 13" x 9" cake; or three 8" round cakes; or two 9" round cakes;

16  or 24 cupcakes.

17       Indeed, courts across the country have found that no reasonable consumer

18  could be deceived by slack-fill when an accurate product count was provided on the

19  packaging.  *See, e.g., Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)

20  ("Plaintiff's claim that the reasonable consumer would be deceived as to the

21  amount of lip product in a tube of Sugar is not plausible.  It is undisputed that the

22  Sugar label discloses the correct weight of included lip product."); *Daniel v.*

23  *Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177  (E.D.N.Y. Feb. 26, 2018) (finding

24  reasonable consumers would not be misled by slack-fill where the product label

25  disclosed weight and total product count); *Martinez-Leander v. Wellnx Life*

26  *Sciences, Inc.*, 16-cv-08220 SJO (EX), 2017 WL 2616918, at *1 (C.D. Cal. Mar. 6,

27  2017) (finding no reasonable consumer would have been misled when defendants

28  listed the number of weight loss pills contained in each bottle they sold); *Fermin v.*

1   *Pfizer Inc.*, No. 15-cv-2133 (SJ) (ST), 2016 WL 6208291, at *2 (E.D.N.Y. Oct. 18,

2   2016) (finding any reliance on the package size to be "plainly negate[d]" by the

3   "clearly stated pill-counts" on the product's labels); *see also Mondelez I*, 2016 WL

4   5886886, at *3 (holding that it was not plausible as a matter of law that a reasonable

5   consumer would be deceived where the package "disclose[d] the net weight of

6   included product, as well as the number of cookies or crackers per container").

7          Plaintiff does not dispute the accuracy of the content disclosures on the Cake

8   Scratch Mix packaging.  He pleads no facts to establish that consumer deception is

9   possible, let alone *probable*.  Instead, Plaintiff asks this Court to accept the

10  "presumption" that reasonable consumers disregard express statements of product

11  weight and yield (Comp. ¶ 22), and would not "bother to look at any label

12  information."  *Id.* at ¶ 1.  But, courts routinely reject the argument that reasonable

13  consumers will simply ignore information that is clearly printed on product

14  packaging.  *See, e.g., Freeman*, 68 F.3d at 289-90 (dismissing false advertising

15  claim, holding that "no reasonable [consumer] could ignore" qualifying language

16  where "[n]one of the qualifying language is hidden or unreadably small"); *see also

17  Stewart*, 2017 WL 4045952, at *9 (citing *Ebner v. Fresh* for the proposition that

18  "'[a] rational consumer,' would not 'simply assume' something about the product

19  that a cursory inspection would show not to be true"); *see also Gitson v. Trader

20  Joe's Co.*, Case No. 13-cv-01333-WHO, 2013 WL 5513711, at *7 (N.D. Cal.

21  Oct. 4, 2013) (dismissing claim under "reasonable consumer" test where "soy milk"

22  label that describes it as an "alternative to dairy milk" "makes it impossible for the

23  plaintiff to prove that a reasonable consumer is likely to be deceived").

24         Finally, in addition to the net weight and yield disclosures on the package,

25  consumers will pick the box off the shelf and will feel the box's weight and any

26  empty space when they place it in their grocery carts.  This additional information

27  further precludes any consumer confusion as to the precise product contents.

28  *Cf. Hawkins v. UGI Corp.*, Case No. 14-08461 DDP (JCx), 2016 WL 2595990, at

1  *3 (C.D. Cal. May 4, 2016) (dismissing slack-fill complaint involving propane gas

2  tanks where consumers could "determin[e] whether some product remains" by

3  "audibly sloshing remaining liquid around in the cylinder").

4      Case law clearly prevents the Plaintiff from basing his deceptive packaging

5  claims solely on the dimensions of the exterior cardboard box.  A reasonable

6  consumer would not, and could not, ignore the product's net weight displayed

7  prominently on the front of the box; the serving size information on the side panel;

8  clear disclosures displayed in chart format providing the product yield upon baking;

9  and the shifting of weight that occurs when picking the box from its shelf.  A

10  consumer of cake mix is interested in how many cakes (or cupcakes) one box will

11  bake.  A reasonable consumer of cake mix would not, and could not, expect 50

12  cupcakes from a box that specifically states the mix will bake 24.  Because Plaintiff

13  is unable to plead any facts showing that a reasonable consumer would probably be

14  deceived by its product packaging, Immaculate requests this Court to dismiss

15  Plaintiff's baseless claims, with prejudice.

16  **B.**    **Plaintiff Fails to Plausibly Allege a Violation of the CLRA.**

17      To survive a motion to dismiss his claims under CLRA §§ 1770(a)(5) and

18  (a)(9), Plaintiff must plausibly allege: "(1) a misrepresentation; (2) reliance on that

19  misrepresentation; and (3) damages caused by that misrepresentation." *Rojas-*

20  *Lozano v. Google*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016), citing *In re Sony*

21  *PS3 Other OS Litig.*, 551 Fed. Appx. 916, 920 (9th Cir. 2014).  Plaintiff's claim

22  under § 1770(a)(9) further requires that he meet the heightened pleading

23  requirements of a fraud claim, since § (a)(9) "specifically requires intent to defraud,

24  which in turn, implies knowledge of the falsity."  *In re Sony PS3 Other OS Litig.*,

25  551 Fed. Appx. at 920.[4]  As discussed below, Plaintiff has not met any of these

26  ───────────────

27      [4] Under California law, a claim for intentional misrepresentation has seven elements: "(1)
the defendant represented to the plaintiff that an important fact was true; (2) that representation was

28  false; (3) the defendant knew that the representation was false when the defendant made it, or the
defendant made the representation recklessly and without regard for its truth; (4) the defendant

threshold pleading requirements, and his Complaint should be dismissed in its entirety.

### 1.    Plaintiff Fails to Plausibly Allege that Immaculate's Packaging Contains any Misrepresentations.

Plaintiff has failed to sufficiently allege even the first element of a CLRA clam:  a misrepresentation.  As previously discussed, Plaintiff is unable to adequately allege that a reasonable consumer is likely to be misled by Immaculate's packaging.  Moreover, his Complaint is devoid of any non-conclusory facts to support his claim that Immaculate's Scratch Cake Mix contains nonfunctional slack-fill.  As such, Plaintiff's Complaint suffers from fatal pleading defects and must be dismissed.

Plaintiff's claims are premised on the inaccurate assertion that Immaculate's Cake Scratch Mix packaging contains nonfunctional slack-fill that is prohibited under California law.  As Plaintiff tacitly admits in his Complaint, a container is not misleading solely because it contains empty space or slack-fill.  *See* Compl. ¶ 14. Rather, for a product to be considered misleading due to the presence of slack-fill, the slack-fill must be "nonfunctional," meaning that it does not serve a statutorily recognized purpose, such as:

- "Protection of the contents of the package;"
- "The requirements of the machines used for enclosing the contents of the package;"
- "Unavoidable product settling during shipping and handling;"
- "The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a

---

intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff."  *Manderville v. PCG & S Group, Inc.*, 146 Cal.App.4th 1486, 1498, 55 Cal.Rptr.3d 59 (2007).

1    food, if that function is inherent to the nature of the food and is

2    clearly communicated to consumers;" and

3    • "Inability to increase the level of fill or to further reduce the size of

4    the package, such as where some minimum package size is

5    necessary to [...] facilitate handling."

6    CAL. BUS. & PROF. CODE § 12606.2(c).

7    Although the Complaint recites the above regulations and contains the

8    conclusory allegation that "[n]one of the above safe-harbor provisions applies to the

9    Cake Scratch Mix products," Compl. ¶ 15, Plaintiff fails to allege any set of facts to

10   support or explain that legal conclusion.

11   Plaintiff's threadbare assertions of non-functionality are analogous to the

12   assertions made in the *Mondelez I* and *Martinez-Leander* complaints, which were

13   both dismissed by courts in the Ninth Circuit.  *See Martinez-Leander*, 2017 WL

14   2616918, at *7; *see also Mondelez I*, 2016 WL 5886886, at *4.  In *Martinez-*

15   *Leander*, after reciting the language of the California slack-fill statute and its

16   exceptions, the plaintiffs concluded that defendants did not meet any of the

17   exceptions and "'lacked any lawful justification' for the empty space."  2017 WL

18   2616918, at *7 (citations omitted).  In granting the motion to dismiss, the court held

19   that such allegations "were conclusory and bereft of factual support" and were

20   therefore "insufficient to state a claim."  *Id*.  Likewise, in *Mondelez I*, plaintiffs

21   "recit[ed] the six circumstances in which slack-fill is functional and not misleading,

22   under 21 C.F.R. § 100.100(a)(1)-(6)" and "allege[d] tersely that none of these

23   circumstances apply here."  2016 WL 5886886, at *4.  The court granted the

24   motion to dismiss, holding that such empty allegations were "insufficient to support

25   a claim of unlawful packaging."  *Id.; see also Bush v. Mondelez Int'l, Inc.*

26   *("Mondelez II")*, Case No. 16-cv-02460-RS, 2016 WL 7324990, at *4

27   (N.D. Cal. Dec. 16, 2016) (granting motion to dismiss amended complaint because

28   the plaintiff's new allegation that "any slack-fill present [...] [was] not a result of

1   the cookies settling" was still a conclusory statement, not a factual allegation).

2          Other courts have also dismissed slack-fill complaints where the plaintiff

3   offers only conclusory allegations that the alleged slack-fill is nonfunctional.  *See*,

4   *e.g.*, *Daniel v. Tootsie Roll Industries, LLC*, No. 17-CV-7541 (NRB), 2018 WL

5   3650015, at *10 (S.D.N.Y. Aug. 1, 2018) (motion to dismiss granted where

6   plaintiff failed to demonstrate "with factual assertions, that the slack-fill in the

7   Products is unnecessary to protect the Junior Mints, [...] or is not the result of

8   unavoidable settling [...].");  *see also Benson v. Fannie May Confections Brands,*

9   *Inc.*, No. 17-C-3519, 2018 WL 1087639, at *4 (N.D. Ill. Feb. 28, 2018) (dismissing

10  slack-fill complaint where plaintiff's "barebones allegations" failed to adequately

11  allege slack-fill was nonfunctional); *see also Bautista v. Cytosport, Inc.*, 223 F.

12  Supp. 3d 182, 190 (S.D.N.Y. Dec. 12, 2016) (dismissing slack-fill complaint,

13  holding that "wholly conclusory allegations are insufficient to state a nonfunctional

14  slack fill claim"); *see also O'Connor v. Henkel Corp.*, No. 14-cv-5547 (AAR)

15  (MDG), 2015 WL 5922183, at *9 (E.D.N.Y. Sept. 22, 2015) (motion to dismiss

16  granted where plaintiffs made "naked assertion[s]" that product's packaging was

17  "deceptive and misleading and [...] designed to increase sales") (citation omitted).

18         This case should be dismissed under the same principles.  Plaintiff

19  formulaically recites the six regulatory safe harbors under California law but fails to

20  plead *any* facts as to why each safe harbor is inapplicable.  Considering the

21  complete lack of relevant facts supporting Plaintiff's conclusions, it is just as

22  conceivable—and much more plausible—that the empty space in the plastic

23  packaging serves a functional purpose rather than an illegal one.  For example,

24  California courts recognize that "settling" "is a normal, unavoidable process for

25  many types of food [...]," including dry goods.  *Mondelez II*, 2016 WL 7324990, at

26  *4 (citations omitted); *see also* CAL. BUS. & PROF. CODE § 12606.2(c)(3).  Here, the

27  light, powdery consistency of cake mix causes it to settle during transport and

28  shelving.  California law also allows slack-fill to accommodate the requirements of

machinery used to enclose the contents of packaging (§ 12606.2(c)(2)); where the packaging performs a specific function, if that function is inherent in the food and clearly communicated to consumers (§ 12606.2(c)(4)); and when the manufacturer is unable to "increase the level of fill or further reduce the size of the package, "such as where some minimum package size is necessary to […] facilitate handling." (§ 12606.2(c)(6)).  Given that cake mix is an inherently powdery, light substance, common sense dictates that each of these lawful and legitimate purposes for slack-fill is applicable, as well.

It is Plaintiff's burden to "nudg[e] his claim" of illegal and unfair methods of competition "across the line from conceivable to plausible."  *Iqbal*, 556 U.S. at 683, quoting *Twombly*, 550 U.S. at 570.  Plaintiff has offered no particularized or plausible allegations as to why the slack-fill at issue does not satisfy a functional purpose, and his legal conclusions are insufficient to state a claim under the CLRA.

### 2.     Plaintiff Has Not and Cannot Allege Reliance and Damages.

Under California law, consumers seeking to recover damages under the CLRA must also prove "actual reliance on the misrepresentation and harm," and that "the misrepresentation was an immediate cause of [their] injury-producing conduct."  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012), citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, 888 (2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 93 Cal. Rptr. 3d 559, 207 P.3d 20, 26 (2009).  A plaintiff may establish that the defendant's misrepresentation is an "immediate cause" of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th at 326.

Here, Plaintiff fatally fails to plead reliance on the product packaging in making his purchasing decision.  Rather, and somewhat surprisingly, Plaintiff effectively disclaims reliance.  He asserts that he "purchased the product for the

dual purpose of enjoying its contents *and determining whether the container was lawfully filled*." Compl. ¶ 3 (emphasis added). Plaintiff readily admits that he did not rely on the package's representations; to the contrary, he made the purchase with the purpose of investigating the truthfulness of the package's representations. Plaintiff also implicitly admits that he cannot satisfy the 9(b) particulars for reliance, because he requests the court to find a *presumption* of reliance rather than requiring him to plead it with any specificity. Compl. ¶ 47. Critically, Plaintiff does not allege that he would not have purchased Immaculate's Cake Scratch Mix absent the alleged misrepresentations. Plaintiff's CLRA claims are grounded in fraud, and as such, he must plead all elements of the CLRA with particularity; he is not entitled to the presumption he requests under California law. *See*, *Gonzales*, 2017 WL 5633274 at *4 (granting motion to dismiss where "Plaintiff has not plausibly pleased reasonable reliance on the Product's outer packaging.").

In addition, Plaintiff's Complaint is devoid of any facts supporting his claim that he was harmed by his purchase of Immaculate's Yellow Cake Scratch Mix. Compl. ¶ 48. Under California law, "the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018) (citations omitted). To adequately allege such an economic injury, "a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she would not have purchased the goods in question absent this misrepresentation." *Id*. at 966 (internal citations omitted).

Here, Plaintiff does not allege that he failed to receive the amount of cake mix or product yield disclosed on Immaculate's packaging; nor does he allege that he did not receive the full value of his purchase, or any economic harm from his purchase. Because Plaintiff has failed to adequately plead *any* of the required

1   elements of his CLRA claim—*i.e.*, a misrepresentation, reliance, and damages—the

2   Complaint should be dismissed in its entirety.

3                              **V.   PLAINTIFF LACKS STANDING**

4        If Plaintiff's Complaint is not dismissed for failure to state a claim under the

5   CLRA, Plaintiff's claims for injunctive relief and for products he did not purchase

6   should be dismissed for lack of standing pursuant to Rule 12(b)(1).  *See* Fed. R.

7   Civ. P. 12(b)(1).

8   **A.     Plaintiff Lacks Standing to Seek Injunctive Relief.**

9        Plaintiff has not, and cannot, demonstrate a real and immediate threat of

10  repeated injury; thus, his request for injunctive relief should fail for lack of

11  standing.  A "plaintiff must demonstrate standing separately for each form of relief

12  sought."  *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 185

13  (2000).  To demonstrate standing for injunctive relief, a plaintiff must demonstrate

14  not just "[p]ast exposure to illegal conduct," but also a "real and immediate threat

15  of repeated injury" going forward.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102

16  (1983); *see also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir.

17  2011).

18       The Ninth Circuit recently recognized that there may be circumstances where

19  "a previously deceived consumer may have standing to seek an injunction against

20  false advertising or labeling, even though the consumer now knows or suspects that

21  the advertising was false at the time of the original purchase."  *Davidson*, 889 F.3d

22  at 969.  In *Davidson*, the court acknowledged it was a "close question" but

23  ultimately held that plaintiff had adequately alleged that she faced an "imminent or

24  actual threat of future harm" where she alleged that she "continue[d] to desire to

25  purchase" the products at issue; "regularly visits stores where" the product was

26  sold;" and was "continuously presented" with the product's packaging but "had no

27  way of determining whether the representations" on the product were in fact true."

28

*Id.* at 970-971.  No such allegations are present in Plaintiff's Complaint against Immaculate.

Here, Plaintiff has not alleged that he intends to purchase any Cake Scratch Mix products in the future, or would like to do so.[5]  The Complaint contains scattershot allegations of *past* purchases (Compl. ¶¶ 3, 9, 17, 24); but there is no indication that Plaintiff will continue *to buy* Yellow Cake Scratch Mix.  Nor could Plaintiff allege that he has "no way of determining" whether the representations on Immaculate's Yellow Cake Scratch Mix are true, given the numerous, accurate disclosures of net weight, serving size, and product yield that are presented on the packaging, which are consistent with FDA labeling requirements.  Moreover, the Ninth Circuit has clarified that *Davidson* does not salvage a plaintiff's standing for injunctive relief where the plaintiff did not rely on the alleged misrepresentations. *Sud v. Costco Wholesale Corp.*, No. 17-15307, 2018 WL 3490675, at *1 (July 20, 2018).  As discussed above, Plaintiff has effectively disclaimed reliance—stating that he purchased Immaculate Yellow Cake Scratch Mix to determine "*whether* the container was lawfully filled."  Compl. ¶ 3 (emphasis added).  Thus, Plaintiff lacks the requisite standing to obtain injunctive relief.

**B.     Plaintiff Lacks Standing to Assert Claims Against All Cake Scratch Mix Products.**

Although Plaintiff alleges that he purchased only one product (a box of Yellow Cake Scratch Mix), he seeks to assert claims on behalf of a class comprised of individuals who purchased *all* Cake Scratch Mix products.  Compl. ¶ 2.  The Ninth Circuit takes different approaches when determining whether lead plaintiffs have standing to assert claims against non-purchased products, as Plaintiff attempts to do here.  *Gordon v. Tootsie Roll Indus., Inc.*, No. CV 172664 DSF (MRWx), 2017 WL 4786090, at *2 (C.D. Cal. Oct. 4, 2017) ("As both parties acknowledge,

---

[5] Plaintiff also fails to allege that he is suffering from any ongoing injury as a result of his past purchase of Yellow Cake Scratch Mix.

1    courts in this Circuit take different approaches when analyzing whether, at the

2    motion to dismiss stage, named class plaintiffs have standing to assert claims for

3    products they did not purchase.").  Some courts have found that plaintiffs lack

4    Article III standing to assert claims regarding non-purchased products, and any

5    claims related to non-purchased products should be dismissed.  *Granfield v.*

6    *NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11,

7    2012).  Other courts, including the Central District of California in *Gordon*, have

8    adopted the "substantially similar" approach.  *Gordon*, 2017 WL 4786090, at *2.

9    Using the "substantially similar" test, courts have found that "the standing

10   requirement is met when named plaintiffs demonstrate substantial similarity

11   between the products actually purchased and the non-purchased products, and any

12   material differences between or among the products is best addressed at class

13   certification."  *Id.* (citing *Astiana v. Dreyer's Grand Ice Cream, Inc.*,

14   No. C-11-2910 EMC, 2012 WL 2990766, at *13 (N.D. Cal. July 20, 2012)).

15          Assuming this Court entertains the question of standing related to non-

16   purchased products at the motion to dismiss stage, Plaintiff does not have standing

17   to assert claims against all Cake Scratch Mix products per the "purchased

18   approach" *and* per the Central District's "substantially similar" approach.  The

19   "purchased approach" is simple.  Plaintiff cannot claim that he was injured by

20   Chocolate Cake Scratch Mix, a product he never purchased.  Plaintiff also lacks

21   standing under the "substantially similar" approach.  The *Gordon* court denied the

22   defendant's motion to dismiss as it related to non-purchased Sugar Babies candy,

23   because the plaintiff sufficiently alleged that Junior Mints, the purchased product,

24   were substantially similar to Sugar Babies.  *Gordon*, 2017 WL 4786090, at *2.

25   However, the *Gordon* court *granted* the defendant's motion to dismiss as it related

26   to all other non-purchased Tootsie Roll products, because "[b]y contrast [...] the

27   SAC includes no factual allegations demonstrating similarities between these

28   products and all other unspecified Tootsie Roll products."  *Id.*, at *2-3.  Here, the

1   Complaint does not even refer to any other Cake Scratch Mix by name, let alone

2   sufficiently allege similarities between Yellow Cake Scratch Mix and other Cake

3   Scratch Mixes.

4        Under both approaches, Plaintiff lacks standing to bring claims for products

5   that he did not purchase, and claims against any Cake Scratch Mix other than

6   Yellow Cake Scratch Mix should be dismissed.

7              **VI.    PLAINTIFF'S CLAIMS ARE PREEMPTED**

8        As noted above, the Federal Food Drug and Cosmetic Act ("FDCA")

9   expressly permits the use of slack-fill for any one of six "functional" purposes.  *See*

10  21 C.F.R. 100.100(a).  Moreover, the FDCA expressly preempts state law claims

11  that impose labeling requirements "not identical" to its own requirements.

12  21 U.S.C. § 343-1.  For the purposes of preemption, the FDA has said that:

13       "'Not identical to' [...] 'means that the State requirement directly or

14       indirectly imposes obligations or contains provisions concerning the

15       composition or labeling of food, or concerning a food container, that:

16       (i) Are not imposed by or contained in the applicable provision ... of

17       the act; or (ii) Differ from those specifically imposed by or contained

18       in the applicable provision (including any implementing regulation) of

19       [...] of the act.'"

20  21 C.F.R. § 100.1(c)(4).  Thus, a plaintiff bringing a misleading labeling claim

21  under state law *must* allege a violation of the FDCA to avoid preemption.  *Trazo v.*

22  *Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *5 (N.D. Cal.

23  Aug. 9, 2013) ("To avoid preemption under Section 343-1(a), the plaintiff must be

24  suing for conduct that violates the FDCA."), *recons. granted on other grounds*,

25  *Trazo v. Nestle USA, Inc.*, 113 F. Supp. 3d 1047 (N.D. Cal. 2015).

26       Here, Plaintiff has failed to adequately allege a violation of the federal slack-

27  fill regulations; in fact, the Complaint does not contain a single reference to the

28  FDCA provisions that govern slack-fill in food packaging.  *See* 21 C.F.R.

§ 100.100(a).  Instead, the Complaint relies exclusively on allegations of CFPLA violations.  Because the Complaint fails to allege noncompliance with federal regulations, he cannot state a non-preempted claim under California law, and the Complaint should be dismissed.  *Trazo*, 2013 WL 4083218, at *5; *see also Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 929 (N.D. Cal. 2014) ("[t]he plaintiff must be suing for conduct that *violates* the FDCA [or else be expressly preempted for seeking to enforce a different or additional substantive requirement]") (emphasis in original).  As previously discussed, Plaintiff has not, and cannot, support his allegations that any slack-fill in Immaculate's packaging is nonfunctional under FDA or California-state regulations.  Thus, his claims are expressly preempted by the FDCA.  *Benson*, 2018 WL 1087639 at *3 (dismissing slack-fill complaint for failing to adequately allege a violation of the federal regulations).

## VII.   CONCLUSION

For the foregoing reasons, Immaculate respectfully requests that the Court enter an order dismissing all claims asserted in Plaintiff's Complaint for Damages and Injunctive Relief with prejudice.


DATED:  August 10, 2018                     **PERKINS COIE LLP**


                                            By: */s/ David T. Biderman*
                                            David T. Biderman (SBN 101577)
                                            DBiderman@perkinscoie.com

                                            Attorneys for Defendant
                                            IMMACULATE BAKING CO.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 10, 2018, I caused to be filed via the CM/ECF system true and correct copies of the following documents and that the service of these documents was accompanied on all parties in the case by CM/ECF system.

*/s/ David T. Biderman*

David T. Biderman (SBN 101577)
DBiderman@perkinscoie.com